**LORRAINE CORPORATION v. UNION TANK & PIPE CO.**

No. 6306.

Circuit Court of Appeals, Ninth Circuit. March 16, 1931.

Rehearing Denied May 11, 1931.

Westall & Wallace and Joseph F. Westall, all of Los Angeles, Cal., for appellant.

Ford W. Harris, of Los Angeles, Cal., for appellee.

Before RUDKIN, WILBUR and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This is an appeal from a final decree dismissing a suit for infringement of letters patent. The patents involved are reissue No. 15,220, dated November 8, 1921, being a reissue of patent No. 1,373,664, dated April 5, 1921; also patents Nos. 1,396,860, dated November 15, 1921, 1,577,917, dated March 23, 1926, and 1,620,771 dated March 15, 1927. These several patents were issued to David G. Lorraine, and by him assigned to the Lorraine Corporation, the appellant here.

Speaking generally, the patented device in controversy is an apparatus, or gas trap, employed for the purpose of separating the oil products, gas, sand, water flowing from oil wells. We had occasion to consider this and similar devices in Lorraine v. Townsend (C. C. A.) 290 F. 54, and Lorraine v. Townsend (C. C. A.) 8 F.(2d) 673, 675. In discussing the first Lorraine patent and the reissue, in the latter case, we said: "The vertical partition is open at the top, so as to permit the collection of gas under pressure to be delivered to the outlet pipe at the top of the cylinder. This partition extends below the normal level of the oil, but terminates a considerable distance above the bottom of the separator. The oil from the well in the Lorraine trap is introduced into the segment lying between the vertical partition and the outer wall of the separator. It passes under the vertical partition into the main chamber of the separator. The sand and water are given an opportunity to settle to the bottom, where they can readily be drawn off. The oil outlet is on the side of the separator. It is operated by a valve, which is controlled by a float resting on the surface of the oil. This float also controls a valve which is attached to the gas outlet. It permits the discharge of oil as the oil level rises, and the discharge of gas as the level of the oil falls. The synchronized valve attachment and the segmental division of the trap are the Lorraine inventions. The testimony satisfies us that they constitute a distinct improvement over the old separators. They permit the discharge of gas or oil, as the situation may require. They are effective in preventing the flow of oil into the gas outlet and of gas into the oil outlet. The partition protects the float from interference by the in-coming oil, and the separator, as a whole, provides good facilities for the settlement of sand and its convenient removal."

We are not now concerned with the vertical partition, because none such is found in the gas trap manufactured and sold by the appellee. The only material issue in the case was thus clearly stated by the court below: "The controversy, as I am able to understand it, is narrowed to the question as to whether the use of outlet valves respectively for oil and gas, operated synchronously by means of a float within the trap receptacle, is a novel feature of plaintiff's contrivance." 48 F.(2d) 848.

Upon this controlling issue the court found that the claims of the several patents in this regard were anticipated by the Moore and Ballard patents, Nos. 428,399 and 1,327,691; and with that conclusion we are in full accord. The Ballard patent disclosed a float in a trap, connected by rods with the valve controlling the gas outlet, above, and the valve controlling the oil outlet, below, so that when the float raised the oil valve opened and the gas valve closed, and vice versa. The same is true of the Moore patent. In the latter, a bar, or rod, extended from the float to the outer edge of the trap, to which was attached a rod connecting with the gas valve above and another rod connecting with the oil valve below, and when the float raised the gas valve closed and, by the same operation, the oil valve opened.

It may be urged that such a result was not intended, nor its importance appreciated, by either Moore or Ballard; but the principle was there, if not already old, and its application required nothing more than ordinary mechanical skill.

Some reliance seems to be placed on the statement in our former opinion that the synchronized valve attachment and the segmental division of the trap were the Lorraine inventions; but it must be remembered

that the sole question determined on that appeal was that certain claims in the reissue were void because not embraced in the original patent.

Little was said during the trial concerning the last two Lorraine patents, but none of the patents was adjudged invalid. The court simply determined that the claim upon which the charge of infringement was based, whether found in one or more of the patents, was void for anticipation, and for that reason dismissed the complaint.

The decree is affirmed.